# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERIC BANKS, | : | CIVIL NO. 1:13-CV-02899 |
| Plaintiff, | : | (Judge Jones) |
| v. | : | |
| TROY TYSON, | : | |
| | : | (Magistrate Judge Schwab) |
| Defendant. | : | |

## REPORT AND RECOMMENDATION

In this civil action, brought pursuant to 42 U.S.C. § 1983, the *pro se* plaintiff, Eric Banks ("Banks"), currently imprisoned at SCI Rockview, solely claims that unconstitutional excessive force was applied on him by defendant Corrections Officer Troy Tyson ("Tyson") at York County Prison ("YCP"). *See Doc.* 1. Currently pending is Tyson's motion for summary judgment. Our recommendation follows.

**I.    Background and Relevant Procedural History**.

Banks initiated this lawsuit on November 29, 2013 by filing a complaint along with a motion to proceed *in forma pauperis*. *Docs. 1 & 2.* In his complaint, Banks alleges that on April 4, 2013, at YCP, Tyson placed him in handcuffs that were applied too tight. Banks claims that he repeated to Tyson that the handcuffs were on too tight, and Tyson made him believe that the cuffs would be loosened; however, Tyson, instead, allegedly grabbed, squeezed, and twisted the handcuffs,

while they were fastened, causing Banks to feel pain.  As well, Banks claims that Tyson's alleged actions caused his wrists to become swollen and cut, and his left thumb and wrist felt numb.  On the day after the alleged incident, Banks received x-rays and was further prescribed a pain medication by a Physician's Assistant ("PA").  In light of these allegations, Banks raises an excessive force claim seeking monetary damages.

On December 2, 2013, we granted Banks' motion to proceed *in forma pauperis*. *See Doc.* 7.  On June 19, 2014, Tyson waived service, *Doc.* 17, and on July 8, 2014, he filed an answer with affirmative defenses, *Doc.* 18.  On July 8, 2014, we entered a case management order calling for the discovery period to close on December 8, 2014, and setting a dispositive-motions deadline for January 5, 2015. *Doc.* 19.  Following the close of the original discovery deadline, Tyson filed a motion for summary judgment along with a statement of material facts and exhibits.  *See Docs.* 30 & 31.   Several discovery-related issues were still outstanding, however.  *See Docs.* 27, 32, 34, 41, 42, & 45.  Upon the resolution of those issues, we gave Banks an additional amount of time, until February 27, 2015, to notify the Court about what discovery he still needed.  *See Doc.* 49.  Once that deadline lapsed, with our satisfaction that any outstanding matters had been resolved, *see, e.g., Docs.* 50 & 52, we ordered the discovery period officially closed. *Doc.* 53.  We also provided Banks with a deadline and opportunity to file a

follow-up brief-in-opposition[1] to the one he had filed on February 24, 2015, *see Doc.* 51, and further informed him of the consequences of failing to properly admit or deny Tyson's statements of material facts since he had not done so. *See Doc.* 53; *accord id.* at 2 n. 1. To date, Banks has not filed an answer (or counterstatement) to Tyson's statement of material facts, admitting or denying the contents thereof, and the deadline for him to do so has lapsed.[2] Tyson also has not filed any additional briefs.

**II. <u>Legal Standard</u>.**

Summary judgment is appropriate only when "the movant shows that there is no genuine issue as to any material fact," and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). Although the movant has the initial burden of demonstrating the absence of genuine issues of material fact, the non-movant must then establish the existence of each element on which he bears the burden of proof. *J.F. Feeser, Inc. v. Serv–A–Portion, Inc.*, 909 F.2d 1524,

---

[1] Along with this brief in opposition, Banks filed an unsigned declaration in addition to several exhibits. *See Docs.* 51-1 & 51-2.

[2] Banks has since filed a motion for an extension of time to file a brief-in-support "for production of documents and interrogatories" in addition to a letter requesting that an attached exhibit be considered part of the record. *See Docs.* 56 & 58. On April 23, 2015, we denied Banks' motion since the discovery period had already closed coupled with the fact that he had no motions pending at the time. *See Doc.* 57. Moreover, with respect to his more recent letter, we will consider the attached exhibit as part of the record, for what it is worth.

3

1531 (3d Cir. 1990) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The non-moving party may not rest on his pleadings but must come forward with competent evidence from which a reasonable factfinder could render a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989); *Woods v. Bentsen*, 889 F.Supp. 179, 184 (E.D. Pa. 1995). Only if this threshold is met may the cause of action proceed. *Pappas v. City of Lebanon*, 331 F.Supp.2d 311, 315 (M.D. Pa. 2004). As the Third Circuit has often stated, "summary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *E.g., Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).

In deciding a motion for summary judgment, the Court must view the evidence, making all reasonable inferences from the evidence in the light most favorable to the non-moving party. *Bouriez v. Carnegie Mellon Univ.*, 585 F.3d 765, 770 (3d Cir. 2009). Whenever a factual issue arises that cannot be resolved without a credibility determination, at this stage the Court must credit the non-moving party's evidence over that presented by the moving party. *Anderson*, 477 U.S. at 255. If there is no factual issue and if only one reasonable conclusion could

arise from the record regarding the potential outcome under the governing law, summary judgment must be awarded in favor of the moving party. *Id.* at 250.

Last, in a case such as this, where critical events at issue have been captured on videotape, the Court is obliged to consider that videotaped evidence in determining whether there is any genuine dispute as to material facts. *See Scott v. Harris*, 550 U.S. 372, 380–81 (2007) (reversing court of appeals ruling with respect to application of qualified immunity in an excessive force case, noting that the court of appeals erred by accepting a version of facts that was shown to be a "visible fiction" and admonishing that the lower court "should have viewed the facts in the light depicted by the videotape.").

### III. Statement of Facts.[3]

---

[3] In addition to the aforementioned legal standard, Rule 56 of the Federal Rules of Civil Procedure also provides: "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may ... consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2). Similarly, this Court's Local Rule 56.1 states: "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party." M.D. Pa. L.R. 56.1.

Here, despite being put on notice of his briefing obligations, *see Doc.* 53, Banks never filed an answer or counterstatement to Tyson's statement of facts. Furthermore, Banks was warned about the consequences of failing to file such a document. *See id.* Consequently, to the extent they are supported by the record evidence, including the submitted video, we will deem Tyson's proposed statement of facts to be admitted by Banks. *See Mackey v. Good*, No. 14-476, 2015 WL 390879, at *3 (M.D. Pa. Jan. 28, 2015)(deeming defendant's statement of facts to be admitted where the *pro se* prisoner-plaintiff failed to file a brief in opposition or a responsive statement of facts).

On April 4, 2013, Banks was "lawfully confined at [YCP] on charges of criminal attempt (homicide), aggravated assault causing serious bodily injury, and carrying a firearm without a license." *See Doc.* 30-4 at 18. While confined there, Banks received a copy of the YCP's Inmate Handbook. The Handbook explained Banks' obligations as follows:

> **5. Basic Inmate / Detainee Responsibilities**
>
> It is the [YCP's] policy to treat you with dignity and respect, while maintaining a safe, secure, and sanitary facility. To assist us in our goal, please cooperate with our staff in the following respects:
>
> - Follow and obey all safety, security, sanitation, rules, laws, policies, and procedures
>
> - Follow and obey all orders given by staff members and contract personnel
>
> - Respect staff and other inmates / detainees at all times
>
> - Respect facility property and the property of others
>
> - Keep yourself, your clothing and living area clean at all times
>
> It is your responsibility to act responsibly and follow the rules of the facility and instructions of the staff. The failure to follow these rules and instructions may result in disciplinary action being taken against you, as necessary, to ensure the order and security of the facility. If you do not know if you are allowed to do something ask a staff member – never assume you are allowed.

*Id.* at 22-23, 26. Among the rules at YCP Banks was obligated to follow, was the following dress code and grooming standard, providing in part:

### 15. Dress Code and Grooming Standards

Inmates / detainees are required to keep themselves clean and to wear appropriate clothing and footwear during all activities. Any deviations from maintaining good personal hygiene and from wearing appropriate clothing could cause potential disciplinary action.

- Jumpsuits and two-piece uniforms are to be worn at all times, whenever traveling outside of your housing units. If you have a two-piece uniform, t-shirts must be tucked into the pants.

  - Inmates / detainees will not walk about the facility with their hands inside the waistband of their pants.

  - No article of clothing will be worn in a manner not normally intended for that item (using a shirt as a head band or head cover, etc.)

  - Orange uniforms – General population, Green uniforms – Hall workers, White uniforms – Kitchen workers.

  - No alteration or modification of facility issued clothing will be allowed.

*Id.* at 22-23, 27. As well, inmates / detainees at YCP are expected to be dressed and fully covered in their assigned prison uniform when interacting with staff, including counselors. *See id.* at 4, 19-20, 37.

On this particular date, Tyson was standing outside of Banks' cell with counselor Gayle Federico ("Federico"). *Id.* at 29, 37, 38. Banks came to the cell

door to talk to Federico while only partially dressed in a prison jumpsuit. *See Doc. 30-4 at 29-30, 37*. Tyson, who was trained to enforce the YCP's dress code policies, twice ordered Banks to get properly dressed while addressing a staff member, but Banks did not comply with the orders. *See id.* at 19, 38. As a result, Tyson ordered Banks to go sit on a bench located in a hallway. *Id.* at 30, 38.

Tyson's orders to Banks, to sit on the bench, also proved fruitless in that Banks still refused to comply. *Id.* Banks also began yelling at Tyson, claiming that he was being disrespected and could not be talked to in a certain manner. *Id.* Since Banks would not cooperate, Tyson placed him in handcuffs. *Id.* at 30-31, 38. Banks' hands, while cuffed, were in front of his body. *See id.* at 31, 38. Once handcuffed, Banks made his way towards the bench in the hallway. *See id.* at 31. At this juncture, the Court has video evidence of what happened next. *See id.* at 6.

On the video, we see Banks, in an orange prison jumpsuit that is hanging off of his body, being escorted to a bench, presumably the one in the hallway, by an individual we also presume to be Tyson. As the two men approach the bench, Tyson knocks off all of the paperwork onto the ground. Banks momentarily stands in front of the bench while appearing to try and pull up his prison jumpsuit. Banks then sits down on the bench and briefly starts talking to an individual out of the camera's range. While talking briefly to a person we cannot see, Banks appears to tug on the handcuffs, and, suddenly, he shifts his body to his right and promptly

stands up. The individual we presume to be Tyson then reappears on the camera and the two men stand face-to-face apparently shouting at each other. Tyson then guides Banks backwards towards the bench. In front of the bench, Banks and Tyson appear to continue arguing. Tyson also keeps his hands on Banks' shirt. After seconds pass, Banks sits back down onto the bench. Almost immediately after sitting down on the bench, Tyson and Banks appear to resume arguing. It is unclear from the video where Tyson's hands were placed at this point; however, in an instant, Banks' cuffed-hands can be seen jerking upwards as he stands up again. As Banks stands again, Tyson holds onto him. Banks then drives Tyson backwards and out of the camera's range. Other YCP employees appear, and the incident draws to a close. In all, the portion of the incident captured on camera between Tyson and Banks lasts approximately two minutes and 30 seconds.

While we can see a portion of what transpired, we cannot hear anything. Tyson nevertheless affirms that Banks complained, as he first stood up from the bench, that the handcuffs were too tight. *See id.* at 38. Tyson informed Banks that if he sat down he (Tyson) would loosen the handcuffs. *Id.* at 38-39. Banks, however, as before, would not immediately listen to Tyson, *id.* at 39, and as reflected on the video, the two men argued continuously. Consequently, during the argument, Tyson placed his hands on the handcuffs while Banks was finally seated on the bench in order to try to maintain physical control over Banks and to prevent

9

him from potentially using the handcuffs as a weapon. *Id.* What happened next, when Banks started to drive Tyson backwards into a wall is partially preserved on the video footage. *See also, id.*

After the incident, Banks complained that he had wrist pain. *See id.* at 11. As such, Banks was seen almost immediately by a Licensed Practical Nurse ("LPN") who noted that Banks had "mild edema" with a small abrasion on his left wrist, but no bleeding. *See id.* at 11, 42. On the right wrist, the same LPN noted that Banks had "minimal amount edema" and no abrasions. *Id.* According to the LPN who evaluated Banks, the noted injuries were minor. *Id.* at 43. In addition, on the day after the incident, Banks' wrists were x-rayed and there was no evidence of a fracture. *See id.* at 10. A PA, however, assessed Banks with having tendonitis in the left wrist on the same date the x-rays were taken, and ordered a medication for him to take. *See id.* at 12. In addition, nearly two months after the incident, another PA assessed Banks with having "neve (sic) damage secondary to handcuff sciatica" in his left wrist, and ordered three medications for him to take. *Id.* at 14. The latter PA has since explained that Banks' injury, i.e. handcuff sciatica, is minor. *See id.* at 46.

## IV. Discussion.

In pertinent part, § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

*See also, Gonzaga Univ. v. Doe*, 536 U.S. 273, 284–85 (2002); *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). "Section 1983 is not a source of substantive rights, but merely a method to vindicate violations of federal law committed by state actors." *Pappas v. City of Lebanon*, 331 F.Supp.2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284–85 (2002)). To establish a claim under § 1983, a plaintiff must show that (1) the conduct complained of was committed by persons acting under color of state law and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. *Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). Importantly, the Third Circuit has also reiterated: "[t]he first step in evaluating a [S]ection 1983 claim is to identify the exact contours of the underlying right said to have been violated and to [then] determine whether the plaintiff has alleged a deprivation of a constitutional right at all." *Morrow v. Balaski*, 719 F.3d 160, 165-66 (3d Cir. 2013)

(*en banc*)(internal quotations and quoted case omitted); *see County of Sacramento v. Lewis*, 523 U.S. 833, 841 (1998).

In this case, no one disputes that Tyson was acting under color of state law. The parties also do not dispute that Banks' sole claim against Tyson is premised upon a claim of unconstitutional excessive force. To that end, the parties further appear to agree that the Eighth Amendment excessive force standard is to be applied. *See Doc.* 31 at 6-11; *Doc.* 51 at 6-11. The parties, however, never squarely address whether Banks was a convicted inmate serving a judgment of sentence at YCP when the incident occurred or whether he was merely being held there as a pre-trial detainee, awaiting trial on charges for, *inter alia*, attempted murder and aggravated assault. At best, Tyson asserts that Banks was a "duly confined prisoner." *See Doc.* 30-3 at ¶ 1; *see also, Doc.* 30-4 at 18; *Doc.* 31 at 2.[4]

This distinction is critical. For starters, Supreme Court precedent is clear that, at minimum, it is "the Due Process Clause [that] protects a pretrial detainee from the use of excessive force," *Graham v. Connor*, 490 U.S. 386, 396 (1989),

---

[4] We also take judicial notice of the criminal docket sheets in *Commonwealth v. Banks*, Nos. CP-67-CR-0003145-2011 and CP-67-CR-0001637-2011, available through Pennsylvania's Unified Judicial Docket System docket research at: http://ujsportal.pacourts.us/.

not the Eighth Amendment[5], since pre-trial detainees (unlike convicted prisoners) cannot be punished. *See Kingsley v. Hendrickson*, No. 14-6368, 576 U.S. ---, 2015 WL 2473447, at *8 (June 22, 2015)(citations omitted); *see also, Bell v. Wolfish*, 441 U.S. 520, 535 n. 16 (1979). In addition, the question of whether force applied amounts to an "unnecessary and wanton infliction of pain," *Whitley v. Albers*, 475 U.S. 312, 320 (1986), i.e., excessive force, in violation of the Eighth Amendment, is determined by "'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)(quoting *Whitley*, 475 U.S. at 320-21); *see Smith v. Price*, No. 14-3865, 2015 WL 1787221, at *1 (3d Cir. Apr. 21, 2015)(Eighth Amendment standard). In other words, the Eighth Amendment analysis necessarily involves an inquiry into the defendant-officer(s)' subjective state of mind. By contrast, the Supreme Court very recently explained that a pre-trial detainee's excessive force claim, under the Fourteenth Amendment Due Process Clause[6], is determined by whether the intentional use of force was *objectively* unreasonable, amounting to punishment. *Kingsley*, 2015 WL 2473447,

---

[5] The Eighth Amendment prohibits cruel and unusual punishment, which includes the unnecessary and wanton infliction of pain by prison officials. U.S. CONST. Amend. VIII; *see also, Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981).

[6] The Due Process Clause provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. Amend. XIV.

at * 5 (quoting *Graham,* 490 U.S. at 396; *Bell v. Wolfish*, 441 U.S. 520, 540 (1979)). Under the Fourteenth Amendment standard, therefore, we are <u>not</u> to evaluate the facts from the officer's subjective perspective, i.e., the officer's state of mind. *See id.*[7]

Despite the fact that doubt remains about Banks' custody status, we proceed to address Banks' excessive force claim under the Eighth Amendment standard, as the parties do here. In evaluating an Eighth Amendment excessive force claim, under the standard set forth *supra*, Courts are to consider many factors including:

> (1) "the need for the application of force"; (2) "the relationship between the need and the amount of force that as used"; (3) "the extent of the injury inflicted"; (4) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them"; and (5) "any efforts made to temper the severity of a forceful

---

[7] Banks does not claim, or contend, that his excessive force claim should be measured under the Fourth Amendment rubric. *See Kingsley*, 2015 WL 2473447, at * 10 (Scalia, J., dissenting)(explaining that the Constitution contains no freestanding prohibition of excessive force, yet, there are four constitutional provisions the Court recognizes as forbidding the use of excessive force, including the Fourth Amendment); *accord id.* at 13 (Alito, J., dissenting)(explaining that the Court has not decided the question about whether a pre-trial detainee can bring a Fourth Amendment excessive force claim); *but see, Passmore v. Ianello*, 528 F. App'x 144, n. 3 (3d Cir. 2013)(noting that the district court "properly" dismissed the excessive force claim raised by a state prisoner under the Fourth Amendment, because such claims only apply to "free citizens")(citing *Graham*, 490 U.S. at 394). In addition, no one suggests that Tyson was a federal actor when the incident occurred; thus, any excessive force claim brought by Banks under the Fifth Amendment Due Process Clause would be subject to dismissal as a matter of law since "the Amendment applies only to federal actors." *Kingsley,* 2015 WL 2473447, at *10 (Scalia, J., dissenting).

response." *Brooks,* 204 F.3d at 106 (quoting *Whitley*, 475 U.S. at 321).

*Markham v. Reish*, No. 08-2222, 2010 WL 2632728, at *5 (M.D. Pa. June 28, 2010). Although there is no minimum threshold regarding the extent of an injury required to establish excessive force under the Eighth Amendment, the prohibition of cruel and unusual punishment "necessarily excludes from constitutional recognition *de minimus* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson,* 503 U.S. at 9–10. Further, as a general rule, judges should not second guess decisions made by prison administrators faced with disturbances or other emergencies affecting prison administration or security. *Whitley,* 475 U.S. at 322.

Here, we do not second guess Tyson's decision to handcuff Banks. To that end, the facts deemed to be admitted demonstrate that Tyson gave Banks chances to comply with his commands before resorting to the use of any force, but Banks acted with defiance in the face of those commands. Thus, the only reasonable inference to be drawn is that Banks was handcuffed solely to restore order in the face of a disturbance initiated by Banks, and the use of force was proportional to the need for some level of force to restore said order.

Banks nevertheless complains that the handcuffs were fastened too tight, which amounted to unconstitutional excessive force. On this point, though, the facts we deem to be admitted demonstrate that Tyson never intended to harm

15

Banks. *See Doc.* 30-4 at 39; *Doc.* 30-3 at ¶ 21. In addition, while not singularly case dispositive, *see Hudson*, 503 U.S. at 7, the facts deemed to be admitted suggest that Banks' injuries were relatively minor. *Cf. Kopec v. Tate*, 361 F.3d 772 (3d Cir. 2004)(plaintiff fainted due to the intensity of the pain and required treatment from a hand surgeon). Tyson moreover offered to loosen the handcuffs when Banks complained they were too tight. Banks and Tyson, though, continuously argued as shown in the video footage, to which Tyson explains revolved around Banks' continued refusal to sit back down on the bench in the face of Tyson's commands to do so. Further, as seen in the video, almost immediately after the situation appeared to be settling, to allow Tyson to loosen the handcuffs, the video shows the two men resume arguing and Banks rises from the bench driving Tyson backwards out of the camera's range. Furthermore, since we deem to be admitted Tyson's version of the events, we fail to find evidence demonstrating that Tyson twisted or manipulated the handcuffs in a manner to cause pain to Banks while the cuffs were fastened; rather, the evidence presented that we rely upon here demonstrates that Tyson placed his hands on the handcuffs solely to keep Banks under control and to prevent him from trying to use the handcuffs as a weapon in the event a physical confrontation resulted; which, to an extent, it did. Thus, upon our consideration of several factors, we conclude that a reasonable juror could not find for Banks under the Eighth Amendment standard.

## V. Recommendation.

Accordingly, for the foregoing reasons, **WE RECOMMEND** that Tyson's motion (*Doc.* 30) for summary judgment be **GRANTED** and that judgment be entered in Tyson's favor on Banks' Eighth Amendment excessive force claim.[8] The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

---

[8] In the event that Banks was a pre-trial detainee and the Fourteenth Amendment standard is applicable, the parties can address that by way of objections to this Report.

Failure to file timely objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

Submitted this **14th** day of **July 2015**.

>                          ***S/ Susan E. Schwab***
>                          Susan E. Schwab
>                          United States Magistrate Judge